# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF MIDDLESEX, OCTOBER TERM 1846, AT CAMBRIDGE.

---

#### PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. SAMUEL S. WILDE,
Hon. CHARLES A. DEWEY, } Justices.
Hon. SAMUEL HUBBARD,

---

SAMUEL P. P. FAY, Judge, &c. *vs.* JEFFERSON TAYLOR & others.

A bond given by a guardian, on his obtaining a license to sell the real estate of his ward, conditioned as required by the Rev. Sts. c. 72, § 10, namely, "to sell the same in the manner prescribed for sales of real estate by executors and administrators, and to account for and dispose of the proceeds of the sale, in the manner provided by law," does not render the sureties liable for the failure of the guardian, at the expiration of his trust, to pay over and deliver the proceeds of such sale, or the securities therefor, to the person who is legally entitled thereto.

DEBT on a bond given to the plaintiff, as judge of probate, on the 6th of June 1837, by the defendant Taylor, as principal, and the other defendants, W. Shattuck and S. Williams, as his sureties. The declaration alleged, as a breach of the condition of the bond, the failure of the defendant well and truly to account for the proceeds of the sale of real estate,

VOL XI. 45

and to dispose of the same according to law. Writ dated August 27th 1844.

The case was submitted to the court on the agreed statement which follows : The defendant Taylor, as guardian of the minor children of B. F. Sawtell, late of Groton, deceased, made a written representation to the plaintiff, on the 2d of May 1837, that it would be for the benefit of said minors that their interest in certain real estate (described) should be disposed of, and the proceeds thereof put out and secured to them on interest ; and he therefore petitioned that he might be authorized and empowered to sell and convey the same agreeably to law. Upon this representation and petition, the plaintiff, at a probate court held on the 6th of June 1837, empowered and licensed the defendant " to make sale of said minors' interest in said real estate, for the reasons and purposes in the aforesaid petition set forth." The said defendant thereupon gave the bond declared on, which, after reciting that he had been licensed, as aforesaid, to sell said real estate, contained the following condition : " If the said Jefferson Taylor shall sell the same in the manner prescribed for sales of real estate by executors and administrators, and shall well and truly account for the proceeds of the sale of said real estate, and dispose of the same according to law, then this obligation to be void."

On the 6th of May 1834, said defendant was duly appointed guardian of the aforesaid minors, and gave bond, with sureties, conditioned to return an inventory of said minors' property, upon oath, within twelve months ; to render, upon oath, when thereto lawfully required, a just and true account of his guardianship, and of the annual income and profits, if any, of said minors' real and personal property, during the continuance of his office of guardian, and, at the expiration thereof, to adjust and settle his accounts with the judge of probate, and pay and deliver over all balances and sums of money, or other property that should be found due upon his accounts, unto said minors, if then of full age ; otherwise, to such person or persons as should be lawfully entitled thereto, or as the judge

of probate should order and direct; and moreover, from time to time, faithfully to preserve, manage and improve all the property of said minors, and in all things, relating to his said office, faithfully to perform and execute the duty and trust of guardian, as the law requires.

On the 15th of July 1837, the said Taylor, as such guardian, sold the real estate aforesaid, pursuant to the license aforesaid, at public auction, to Ebenezer Sawtell, for the sum of $1350, and conveyed the same to him accordingly, and on the same day took his promissory note for said sum, payable to the said Taylor, or his order, in thirteen years from date, with interest yearly, and also took a mortgage from said Sawtell of the same and other real estate, to secure payment of said note. The said Taylor afterwards received of said Sawtell, on said note, as follows; to wit, July 15th 1838, eighty one dollars, as one year's interest; July 15th 1839, eighty one dollars, as one year's interest; November 4th 1839, eight hundred dollars; March 16th 1840, one hundred dollars; July 15th 1840, fifty five dollars and fifty five cents, as one year's interest; July 15th 1841, twenty seven dollars, as one year's interest; and July 15th 1842, twenty seven dollars, as one year's interest. A part of said money, the said Taylor, as such guardian, applied, from time to time, (as appears from his guardianship accounts, settled in the probate court,) towards the support and maintenance of said minors, his wards.

On the 3d of May 1842, upon the application of his sureties in his original guardianship bond, the said Taylor was duly discharged from his said guardianship, and Phinehas J. Prescott was appointed guardian of said minors, in his stead. On the 1st of November 1842, the said Taylor settled his guardianship accounts in the probate court, and therein charged himself with the amount of the personal property of his wards, being $31·20, and with five per cent. interest thereon from May 3d 1836 to May 3d 1842, and also with the proceeds of the sale of said real estate, and with five per cent. interest thereon from July 1837 to May 1842; and therein

charged his said wards with divers sums of money paid in due course of his said guardianship, and with certain services rendered ; and there was found remaining due to his said wards the sum of $777·03, which the said Phinehas J. Prescott, as such guardian, immediately demanded of the said Taylor, and also demanded the aforesaid note and mortgage ; and the said Taylor then refused to pay said sum to said Prescott, and also refused to deliver to said Prescott the said note and mortgage. But the said Taylor afterwards, on the 25th of June 1844, delivered to said Prescott the said note and mortgage, on which there was then due about $505, in part satisfaction of said sum.

It was agreed by the parties, that if, on these facts, the court should be of opinion that there had been a breach of the condition of the bond declared on, then judgment should be rendered against the defendant for such sum as the court should direct ; otherwise, that the plaintiff should become nonsuit.

This case was argued at the last October term.

*Farley,* for the plaintiff. The bond in suit contains the exact conditions which are prescribed, by Rev. Sts. c. 72, § 10, in all cases of a guardian's being licensed to sell his ward's real estate, whatever may be the cause for the sale. The condition, " well and truly to account for the proceeds of the sale," means something more than taking the proceeds and investing them. In *Bache* v. *Proctor,* 1 Doug. 382, where the condition of a bond was, that the obligor should render a fair, just and perfect account, in writing, of all and every sum and sums of money that he should receive, it was decided that this condition was broken by his neglect to pay over the sums received by him. And a like decision was made by this court, in *Shattuck* v. *Monroe,* in this county, in 1832.

In *Lyman* v. *Conkey,* 1 Met. 317, it was held that the sureties on a guardian's general bond were not liable for his breach of duty in respect to the sale of his ward's real estate, and the application of the proceeds of the sale, when such

sale was licensed on the gr~und that it would be for the ward's benefit; but that the sureties on the special bond were liable for such breach of duty. Therefore, unless the sureties, who are now sued, are liable, no one is liable.

*B. Russell,* for Shattuck and Williams. Upon the facts agreed, the sureties on this bond are not liable; as those facts do not show a breach of the condition thereof. The license to the guardian was under the Rev. Sts. *c.* 72, and no order was passed concerning the investment of the proceeds of the sale. That matter was therefore left to the guardian's judgment. His sureties did not engage for his paying over the proceeds, but for his accounting for them and disposing of them according to law; and these two things he has done. The sureties on his general bond, if any body, are liable for his default in not paying over to Prescott the proceeds of the sale of the wards' real estate. The general bond, required of guardians by Rev. Sts. *c.* 79, § 5, covers such a default; and if it is not covered by the general bond executed by the guardian and sureties, on the 6th of May 1834, containing the conditions prescribed by the statutes then in force, that is no reason for charging the sureties on the bond, which is now in suit, beyond the terms of their engagement.

DEWEY, J. The liability of the obligors of a bond given by a guardian, upon obtaining license to sell the real estate of his ward, arises under the provisions of the Rev. Sts. *c.* 72, § 10, which require every guardian, so licensed to sell real estate, to give bond to the judge of probate, "with condition to sell the same in the manner prescribed for sales of real estate by executors and administrators, and to account for and dispose of the proceeds of the sale, in the manner provided by law." This bond, it will be seen, is special and limited in its condition, and the more general duty of properly managing the estate of his ward, including the proceeds of real estate sold, and of settling his accounts at the expiration of his trust, and paying over and delivering all the estate and effects to the person lawfully entitled thereto, is secured by his original bond given upon his appointment as guardian.

45*

The Rev. Sts. *c.* 79, § 5, prescribe the conditions of such bond, among which is distinctly embraced the rendering of an account, on oath, of the proceeds of all real estate of the ward, sold by such guardian.

The result of these provisions of the revised statutes is, that the original bond covers the liability of the guardian as to accounting for, managing and paying over the proceeds of real estate sold, and that the bond given upon obtaining leave to make sale applies only to a proper compliance with the prerequisites to such sale, and a faithful discharge of his duties in conducting the sale, and investing the proceeds thereof in the manner directed by the order of sale.

It is conceded that all the proceedings of the guardian, under the license to sell real estate, were proper and in conformity to law, and that the proceeds were invested in a note secured by a sufficient mortgage ; and the real ground of complaint is, that the guardian subsequently mismanaged the proceeds of the sale, and has neglected duly to pay them over to the new guardian, upon being discharged from the guardianship. The revised statutes have materially changed the provisions of law as to the guardian's bond ; and as the bond, which is the subject of the present action, was given since those statutes went into operation, it must be construed in reference to them, although the original bond was executed prior to their enactment, and may fail to furnish all the requisite security to the wards, which a bond under the revised statutes would have done.

*Plaintiff nonsuit*